## EATON v. WHITE, Internal Revenue Collector.

### No. 5459.

District Court, D. Massachusetts.

Sept. 6, 1933.

Ropes, Gray, Boyden & Perkins, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., both of Boston, Mass., for defendant.

LOWELL, District Judge.

This case involves a deficiency tax imposed by the Commissioner of Internal Revenue. The question arises out of the incorporation of Thompson's Spa, which was a partnership of three men, the plaintiff and his two brothers, each owning a one-third interest. The brothers also owned the en-

tire stock of the Sumner Company, which owned the real estate used in the business. In the fall of 1928 the plaintiff and his brothers entered into an arrangement with Hale, Waters & Co. for the incorporation of Thompson's Spa and the sale of some of its stock to the public. The steps were as follows:

On November 8 the three partners formed a company called the Coleman Company and put in $300. Later on the name of this company was changed to Thompson's Spa, Inc., and the three partners invested $15,000 in that company, for which they issued to themselves its entire stock, making the total amount invested $15,300. Shortly before this second step the partners had agreed with Hale, Waters & Co. to transfer to the new company all the business of Thompson's Spa and all the assets of the Sumner Company, and then transfer to Hale, Waters & Co. all the preferred shares of Thompson's Spa, Inc., together with certain of the common shares. The brothers each owned 390 shares of the Sumner Company, which was its entire capitalization. For these 390 shares, except 30 shares which the plaintiff transferred to his wife, the plaintiff became entitled upon the liquidation of the Sumner Company to preferred shares in Thompson's Spa, Inc., which he ordered delivered to Hale, Waters & Co., and for which he received cash. The assets of the Sumner Company had previously been transferred to Thompson's Spa, Inc., for preferred shares in the latter company. This gift to the plaintiff's wife raises one of the questions involved in the present suit. The plaintiff and his brothers also transferred to the new company all the good will and assets of the partnership of Thompson's Spa.

The main question arises on the shares of common stock in Thompson's Spa, Inc., still held by the plaintiff. As one of the steps in the transaction, the three brothers had agreed to manage Thompson's Spa, Inc., for three years, and kept to themselves the majority of the common stock of the corporation so that they might control it. The case arises on an agreed statement of facts, from which it appears that at the time of the issue to the plaintiff and his brothers of the common stock of Thompson's Spa, Inc., the only value then represented by this stock was $15,300, as the business of Thompson's Spa had not then been transferred to it. This stock was worth 10 cents a share. After the transaction with Hale, Waters & Co. was completed the common stock still held by the plaintiff and his brothers was worth $10.70 per share. The plaintiff made a return showing only the profits on the preferred stock of Thompson's Spa transferred to Hale, Waters & Co. The Commissioner imposed an additional tax, which the plaintiff paid under protest. It is conceded that the method of arriving at this additional tax was incorrect, as the real facts were not then known.

This is a suit to recover the deficiency tax. The government's answer is that under the doctrine of Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293, the plaintiff cannot recover, although the tax imposed was illegal if under a proper theory of taxation a greater amount of tax was due, although it cannot now be recovered, as the statute of limitations has run. The plaintiff does not controvert this contention, but insists that under no circumstances would a tax be legal which was greater than that due as shown by his return.

The plaintiff's argument, as I understand it, is that, while the plaintiff now has shares of stock worth $10.70 which were worth only 10 cents before the transaction took place, this additional value in the common shares was not received by him as a result of the transaction, and no profits have been realized. See Revenue Act 1928, § 111 (c), 26 USCA § 2111 (c). The argument seems to me a specious one, without solid foundation. To support it, the plaintiff contends that before the transaction took place the plaintiff had shares of stock worth 10 cents, and afterwards he had the same shares of stock on which he has not realized any profit. The fallacy of the argument is that before the transaction took place the plaintiff had no shares of stock whatever, but merely a one-third interest in the partnership of Thompson's Spa and a one-third interest in the Sumner Company. The formation of the Thompson's Spa Company and the issue of the preliminary shares to the plaintiff and his brothers was but a step in the whole transaction, by which the plaintiff profited by the sales of shares of the common and preferred stock, and also by the increased value of the common stock held by him. Carter Publication v. Commissioner, 28 B. T. A. —— (decided May 23, 1933); Connecticut Power Co. v. Commissioner, 28 B. T. A. —— (decided May 5, 1933); Redington v. Commissioner, 25 B. T. A. 707, 712.

The case of Fraser v. Nauts (D. C.) 8 F.(2d) 106, relied on by the plaintiff, is not in point. The question there was whether a

sale of lumber was made in a certain way purposely to cheat the government. Instead of selling it outright for $525,000, a lumber dealer sold the lumber on hand for $250,-000, sold the good will of his business for $100,000, and transferred the lease of his lumber yard, which was useful to the purchaser, at such a price that the total paid by the buyer was $525,000. The judge held that this was not a scheme to defraud the government. The case would be in point were it the contention of the government that the steps in the transaction of selling shares of Thompson's Spa, Inc., to the public were taken in such a manner as purposely to defraud the government of part of a tax. There is no such contention in the present case.

There remains the question of the tax on the profits on the shares of preferred stock in Thompson's Spa, Inc., representing the 30 shares of Sumner Company given by the plaintiff to his wife. The government's contention is that the plaintiff cannot escape this tax, because he had already entered into a binding agreement to transfer these shares to Hale, Waters & Co. On this branch of the case I rule that the tax is illegal. The plaintiff agreed "to deliver and sell and/or to cause the corporation to deliver and sell" these shares. Under these circumstances his obligation to Hale, Waters & Co. would have been fulfilled by causing the corporation to deliver the shares, and there was no binding contract that he himself should deliver them. Under these circumstances it seems to me that the gift to Mrs. Eaton was properly made, and that the plaintiff acquired no profit on the shares representing this gift.

On the entire case I rule that the tax imposed was less than one which might have been levied, and, although this greater tax is now outlawed, the plaintiff cannot recover. Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293.